COURT OF APPEALS
DECISION
DATED AND FILED

May 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1110**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023JV187

**IN COURT OF APPEALS
DISTRICT I**

---

IN THE INTEREST OF S.R., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-APPELLANT,

  V.

S.R.,

      RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: NIDHI KASHYAP, Judge. *Affirmed.*

¶1 DONALD, P.J.[1] The State appeals from an order dismissing a delinquency petition filed against S.R. (hereinafter Susan)[2] and referring the matter for a deferred prosecution agreement (DPA). The State contends that the trial court erroneously exercised its discretion. For the reasons discussed below, we reject the State's argument and affirm.

## BACKGROUND

¶2 On December 27, 2022, at 2:44 a.m., police observed a blue Honda CRV operating without its headlights on and lacking registration plates. Police attempted to stop the vehicle, but the CRV fled reaching a high level of speed at one point and disregarding stop signs and red lights. Eventually, police conducted a pursuit intervention maneuver and the CRV struck a tree and came to a stop. Fourteen-year-old Susan, the driver, got out of the CRV and took off running. Another peer-aged child remained in the passenger's seat. Officers chased Susan, tased her twice, and took her into custody. Officers located an uncapped bottle of alcohol in the CRV's center console. The State charged Susan with second-degree recklessly endangering safety, attempting to flee or elude an officer, and obstructing an officer.

¶3 Susan's counsel filed a motion to dismiss and refer the matter for a DPA pursuant to WIS. STAT. § 938.21(7). As grounds, counsel cited a number of factors, including Susan's young age, her predisposition cooperation, lack of a prior juvenile record, positive academic record, low risk to reoffend on a risk

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, in lieu of using the initials S.R., we use the pseudonym "Susan."

assessment tool, and participation in therapy. The motion asserted that a DPA would satisfy the public's interest in holding Susan accountable, monitoring her, and providing her with services.

¶4     At the subsequent hearing, the State requested to file a response to the DPA motion. The State also informed the trial court it was considering resolving the matter via a consent decree pursuant to WIS. STAT. § 938.32 contingent upon whether the court granted a DPA.[3]

¶5     In its written response, the State argued that a DPA was insufficient to serve Susan's needs or protect the community. The State focused on the facts of the underlying offense and alleged that a DPA would not hold Susan accountable, provide individualized services, or protect the public. The State argued that granting a DPA would communicate to the public that "your first one is free," and therefore exacerbate the problem. Along with the motion, the State submitted the Intake Conference Assessment, a set of police reports, and an example of a two-month DPA from another confidential case.

¶6     On June 1, 2023, the trial court held a hearing on the motion. Susan's counsel began by noting that Susan was fourteen years old, a straight-A student with "great aspirations to be a doctor or lawyer," and did not have any prior or subsequent referrals. In addition, Susan was part of the "National Young Junior Leaders." Counsel also stated that Susan was not part of a gang, the vehicle was not stolen, and she was at low risk to reoffend. Counsel noted that while there

---

[3] A consent decree allows a juvenile to be placed outside of the juvenile's home and may be extended beyond a year. *See* ***State v. C.G.B.***, 2017 WI App 32, ¶¶7-8, 375 Wis. 2d 781, 896 N.W.2d 387.

was alcohol in the vehicle, the police did not indicate that Susan showed any signs of intoxication, and if she was intoxicated, she would have faced an additional charge. Susan's mother also noted that Susan was invited to go on a seven-day college tour in Washington D.C. based on her good grades and her involvement with the track and cheerleading teams.

¶7     The Human Services Worker, Angelica Soto, stated that there were no alcohol and drug (AODA) concerns or absence without leave behavior. Soto also reported that Susan was doing "very well following the placement rules" and keeping in communication with her aunt and mother. Soto, however, did not support a DPA and believed that a consent decree would be more appropriate because Susan apparently had another matter open.[4]

¶8     Soto's supervisor, Mike Hodge, equivocated on whether a DPA or a consent decree would be more appropriate. Hodge indicated that a DPA would likely be nine months. Hodge stated that if getting tased did not have an effect, it "doesn't matter how long or what type of order she's going to be on; because, I would imagine that would have [been] a traumatic experience [for] her." Hodge informed the court that on a DPA, services would be available including a GAIN assessment[5] and drug and alcohol counseling from various vendors.

¶9     The State played the squad car video of the chase. The State indicated that this was "not the most aggravated fleeing I've ever seen," as it was

---

[4] No additional information was submitted regarding this matter.

[5] A GAIN assessment is a comprehensive bio-psychosocial assessment, which can be used to screen for substance use and disorders. *See generally* www.gaincc.org (last visited May 6, 2024).

"somewhat of a low-speed fleeing." According to the State, a DPA was not appropriate because Susan could have killed or seriously injured herself, her passenger, or someone else. The State also noted its skepticism that Susan had not consumed alcohol considering the uncapped bottle of alcohol, a jug of what appeared to be fruit punch in the well of the front passenger's seat, and a cup in the driver's side door pocket which appeared to contain some liquid. The State contended that reckless driving and fleeing are a "chronic problem" in Milwaukee County and dismissing this type of case would only exacerbate the problem. In addition, the State argued that a DPA would not provide sufficient supervision and pointed to the confidential juvenile DPA filed with its motion.

¶10 The trial court began its decision by stating that "[t]his is a tough case because I agree with a lot of what has been said by everyone[.]" The court indicated that, like the State, it believed that Susan has an AODA need based on the bottle of alcohol in the vehicle. The court stated that any use of alcohol at Susan's age was inappropriate.

¶11 Next, the trial court examined whether it was in Susan's best interest for a DPA to be granted. The court noted that Susan has good grades, no prior record, and was at a low risk to reoffend. The trial court found that a DPA would benefit Susan because she could receive services without further court involvement.

¶12 The trial court then stated "now, comes a harder question, does it benefit the community." The court noted that Susan put herself, her passenger, other civilian drivers, and the police in danger. The court then stated that the biggest question was therefore whether "the community [will] be sufficiently protected with a DPA." The court stated that Susan was at a low risk to reoffend

and had "a lot to lose." The court further stated that her "biggest concern" with Susan was an AODA need, which could be addressed with a DPA. Thus, the court found that it was in the best interest of the public to dismiss the case and refer the matter for a DPA. The State now appeals.

## DISCUSSION

¶13 WISCONSIN STAT. § 938.21(7) provides that a court has discretion to dismiss a juvenile case and refer the matter for a deferred prosecution, if it is in "the best interests of the juvenile and the public[.]" *See also* ***State v. Hezzie R.***, 219 Wis. 2d 848, 874, 580 N.W.2d 660 (1998).

¶14 On appeal, we "defer to the discretionary decisions of [trial] court judges, who are in the best position to observe the facts and apply the law." ***State v. X.S.***, 2022 WI 49, ¶53, 402 Wis. 2d 481, 976 N.W.2d 425. We will not search the record to find reasons to overturn a trial court's decision, however, a trial court "must exercise their discretion within the bounds of reasonable decision-making." ***Id.***

¶15 The State contends that "there is nothing in the record that demonstrates dismissing the petition was in the public's interest" and "[c]onsequently, there is not a rational basis in the record for finding that dismissing the case was in the public's interest." The State also asserts that the

trial court "did not engage in a process of reasoning or proper explanation when it concluded that the best interest of the public would be served by a [DPA]."[6]

¶16    First, we disagree that the record is deficient with respect to the public's interest. Susan's motion asserted that a DPA would satisfy the public's interest in holding Susan accountable, monitoring her, and providing her with services. Additionally, the motion asserted a DPA would "minimize the potential for further negative behavior."

¶17    Second, the trial court appropriately considered the best interest of the public. The court stated that this was a hard question and acknowledged the seriousness of the offense. The court then addressed the State's arguments regarding whether a DPA would adequately protect the public. The court considered Susan's risk assessment and that Susan has "a lot to lose" given that she is a good student who wants to go to college. The court further stated that her "biggest concern" with Susan was AODA, which could be addressed with a DPA. The court then found that it is in the best interest of the public to dismiss the case and refer the matter for a DPA. Thus, the trial court examined the evidence and delineated its reasoning. Based on the record and the court's comments, we are not persuaded that granting Susan's motion was unreasonable.

¶18    Therefore, for the reasons stated above, we affirm.

*By the Court.*—Order affirmed.

---

[6] The State additionally asserts that "[i]t is debatable whether there was a reasonable basis for the trial court to find that dismissing the petition was in [Susan's] best interest[.]" The State, however, does not further discuss or address Susan's best interest. We do not address conclusory and undeveloped arguments. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (1992).

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.